UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DREW LESLIE RIDLEY,

                            Plaintiff,

v.	6:16-CV-1353
	(WBC)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:	OF COUNSEL:

OLINSKY LAW GROUP	HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.	SIXTINA FERNANDEZ, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 13).

Currently before the Court, in this Social Security action filed by Drew Leslie Ridley ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion is granted, to the extent it seeks remand under Sentence Four of 42 U.S.C. § 405(g), and Defendant's motion is denied.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1981. (T. 70.) She completed high school. (T. 220.) Generally, Plaintiff's alleged disability consists of degenerative disc disease, diabetes, arthritis, and asthma. (T. 248.) Her alleged disability onset date is February 1, 2013. (T. 248.) Her date last insured is June 30, 2016. (T. 70.) She previously worked as a cashier and in customer service. (T. 220.)

### B. Procedural History

On April 9, 2014, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 70.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On March 3, 2015, Plaintiff appeared before the ALJ, John Murdock. (T. 38-67.) On June 26, 2015, ALJ Murdock issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 21-35.) On September 14, 2016 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 26-31.) First, the ALJ found that Plaintiff met the insured status requirements through June 30, 2016 and Plaintiff had not engaged in substantial gainful activity since February 1, 2013. (T. 26.) Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, status post laminectomy and discectomy of the lumbar spine, hyperglycemia, and left wrist pain. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 27.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of light work. (*Id.*)[1] Fifth, the ALJ determined that Plaintiff was capable of performing her past relevant work. (T. 30.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the RFC determination was not supported by substantial evidence. (Dkt. No. 9 at 9-13 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the step four determination was not supported by substantial evidence. (*Id.* at 13-14.)

---

[1]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ correctly found at step two that Plaintiff's depression was not a severe impairment. (Dkt. No. 10 at 6- [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's RFC determination was supported by substantial evidence. (*Id.* at 10-14.) Third, and lastly, Defendant argues the ALJ correctly found Plaintiff was able to return to her past relevant work.

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual

functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any medical sources. *Id.* at §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(c), 416.945(a)(3), 416.946(c).

The relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. §§ 404.1527(c) and 416.927(c). " '[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[2] Effective March 27, 2017, many of the Regulation cited herein have been amended, as have SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

and is not inconsistent with the other substantial evidence in the case record.' " *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

There are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.' " *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x. 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.' " *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).

### A.  Medical Evidence in the Record

The medical record contains a medical source statement completed by treating source, Jennifer Quinn, M.D., and a medical source statement completed by consultative examiner, Tanya Perkins-Mwantuali, M.D.  (T. 398-402, 412-414.)

In her medical source statement, Dr. Quinn noted she began treating Plaintiff in 2013 and Plaintiff suffered from degenerative disc disease of the lumbar spine, sciatica, hyperglycemia, depression and anxiety. (T. 412.)

Dr. Quinn provided exertional and non-exertional limitations. She indicated that Plaintiff could sit for 30 minutes at a time and stand/walk for 10 minutes at a time. (T. 412.) She opined that in an eight hour workday, Plaintiff could sit for a total of three hours and stand/walk for a total of one hour. (*Id.*) She checked the box "yes" indicating Plaintiff would require a job which permitted shifting positions at will. (*Id.*) She checked the box "yes" indicating Plaintiff would need to take unscheduled breaks during the day; specifically, Plaintiff would need to take a 15 minute break every hour "if not more." (*Id.*) Dr. Quinn indicated that Plaintiff could occasionally lift and carry up to ten pounds, and never lift and carry more than 20 pounds. (T. 413.) Dr. Quinn indicated that Plaintiff had no limitations using her hands or fingers, but could only reach "10%" of the workday with her arms. (*Id.*) Dr. Quinn opined Plaintiff would be absent more than four times a month, was not a malingerer, her impairments were reasonably consistent with her symptoms and functional limitations, and she was incapable for working eight hours a day/five days a week. (*Id.*)

Dr. Perkins-Mwantuali performed an examination and provided a medical source statement. In her statement, she opined that Plaintiff had "moderate to marked limitations bending and twisting, moderate limitations with kneeling, crawling, squatting, and climbing." (T. 401.)

The ALJ afforded Dr. Quinn's opinion "very limited weight." (T. 29.) In support of his determination, the ALJ reasoned that Dr. Quinn's treatment notations were "not

entirely consistent" with her opinion and that treatment records failed to provide "strong support." (T. 29.) Specifically, the ALJ reasoned that Dr. Quinn never stated or found any functional limitations during her treatment visits; Dr. Quinn never referred Plaintiff to a specialist for her back or neck pain; imaging showed "some difficulties," but Dr. Quinn never "gave a list of functional limitations" or restricted Plaintiff from working or any other activities; and Dr. Quinn prescribed medication that, at times, controlled Plaintiff's pain. (*Id.*)

Plaintiff asserts that the ALJ erred in his determination to afford Dr. Quinn's opinion "very limited weight" because he erred in his "interpretation" of the doctor's treatment notes. (Dkt. No. 9 at 10 [Pl.'s Mem. of Law].) Specifically, Plaintiff argues that the ALJ's statement, that Dr. Quinn never referred Plaintiff to a specialist, was based on a misreading of the record. (*Id.*) In support of her argument, Plaintiff relies on a treatment notation which indicated that an orthopedic evaluation was pending. (*Id.*; T. 434.) However, based on the context of the treatment notations, the orthopedic evaluation was for Plaintiff's left wrist pain and not for her back/neck pain. (T. 433.) Therefore, the ALJ did not misread the medical record in concluding that Dr. Quinn did not refer Plaintiff to a specialist for her back and neck impairments.

Defendant asserts that the ALJ did not err in his assessment of Dr. Quinn's opinion because the opinion was not consistent with her own treatment notes reflecting mostly unremarkable findings. (Dkt. No. 10 at 13 [Def.'s Mem. of Law].) However, that was not what the ALJ reasoned. To be sure, the ALJ stated Dr. Quinn's opinion was inconsistent with treatment notes; however, the ALJ did not find that her opinion was inconsistent with "unremarkable findings." (T.29.) The ALJ discredited Dr. Quinn's

opinion, despite examination findings and imaging results, because treatment notations failed to include specific functional limitations or other restrictions.  (*Id.*)  This is not good reason to reject Dr. Quinn's opinion.  Dr. Quinn did not treat Plaintiff while she was employed, nor did she treat Plaintiff in the context of a Worker's Compensation claim.  Therefore, it not surprising that Dr. Quinn would not provide specific functional work limitations in her treatment notations.

The Second Circuit held that a treating source's silence as to a patient's credibility was unsurprising because a doctor's "primary endeavor is to provide medical expertise rather than to assess credibility."  *Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541, 542 (2d Cir. 2011).  The same reasoning applies here.  Dr. Quinn's primary role was to provide Plaintiff with medical treatment, not functional limitations, especially given the fact that Plaintiff was not working at the time of treatment.  Further, when Dr. Quinn was asked to provide specific work related functional limitations she complied.  Therefore, the ALJ improperly "emphasized the lack of specific functional limitations provided by the treating source[] and used this lack of information to support [his] rejection of [her] opinion[]."  *Barton v. Colvin*, No. 3:13-CV-1199 (GTS), 2015 WL 5511999, at *4 (N.D.N.Y. Sept. 15, 2015).

Plaintiff also argues that the ALJ erred in his analysis of Dr. Perkins-Mwantuali's opinion.  (Dkt. No. 9 at 11 [Pl.'s Mem. of Law].)  Plaintiff essentially argues that the doctor's opinion was supported by her examination of Plaintiff and the ALJ conducted an impermissible "sit and squirm" test.  (*Id.*)

The ALJ afforded Dr. Perkins-Mwantuali's opinion "very limited weight."  (T. 29.)  The ALJ stated that although Plaintiff had "deficits during the examination" she was able

10

to rise from a chair, had a normal gait, control her pain with medication, and she did not require an assistive device. (*Id.*) The ALJ further noted that Plaintiff never asked to get up or change position during the hearing. (T. 29-30.) The ALJ also stated that because Dr. Perkins-Mwantuali was a one-time consultative examiner, her opinion was entitled to less weight than Plaintiff's primary care provider. (T. 30.)

To be sure, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

Here, the ALJ seemingly rejected the whole of Dr. Perkins-Mwantuali's opinion based on her negative findings, while ignoring other positive findings on examination. Elsewhere in his determination, the ALJ noted Dr. Perkins-Mwantuali observations that Plaintiff could partially squat and had limited range of motion in her spine. (T. 28-29.) But in evaluating the doctor's opinion the ALJ only relied on findings he determined were inconsistent with the doctor's opinion. Of note, the ALJ's statement that Dr.

11

Perkins-Mwantuali's opinion was entitled to less weight than Dr. Quinn was baffling because the ALJ afforded both doctors' opinions "very little weight."

The ALJ committed further error in discounting Dr. Perkins-Mwantuali's opinion based on his lay assessment of Plaintiff's ability to sit during the hearing. As outlined herein, the relevant factors considered in determining what weight to afford an opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Although an ALJ may consider his own observations of a plaintiff at the hearing as part of his overall credibility evaluation, it is improper for an ALJ to discredit a physician's opinion based on his observations at the hearing. SSR 96-7p, 1996 WL 374186, at *5. The ALJ impermissibly substituted his own opinion for that of a medical opinion in discrediting Dr. Perkins-Mwantuali's opinion based on personal observations at a hearing. *See Aubeuf v. Schweiker,* 649 F.2d 107, 113 (2d Cir.1981) (stating that serious questions are raised "with respect to the propriety of subjecting claimants to a 'sit and squirm index,' and with respect to rendition by the ALJ of an expert medical opinion which is beyond his competence); *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (an ALJ may not arbitrarily substitute his or her own judgment for competent medical opinion).

For the reasons stated herein, the ALJ failed to properly analyze the medical opinion evidence in the record. Remand is therefore appropriate.

### B. RFC Determination

First, Plaintiff argues that in rejecting both of medical source opinions in the record he produced an RFC not supported by substantial evidence. (Dkt. No. 9 at 11 [Pl.'s Mem. of Law].) The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required. *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotations omitted). Therefore, the ALJ did not err in formulating an RFC without a specific medical opinion.

Second, Plaintiff argues the ALJ's determination failed to provide sufficient analysis to support his determination that Plaintiff could perform light work. (Dkt. No. 9 at 12 [Pl.'s Mem. of Law].) Although the ALJ outlined the medical evidence in the record and provided an analysis of the weight he afforded opinion evidence, the ALJ's decision was silent concerning how he formulated his RFC determination or what evidence in the record supported his RFC determination.

Plaintiff asserts that although the ALJ stated he did not rely on the opinion of the single decision ("SDM"), the opinion of the SDM at the initial level was consistent with the ALJ's RFC. (Dkt. No. 9 at 12 [Pl.'s Mem. of Law].) This Court has noted that "ALJs have been instructed by the Social Security Administration that the opinions of SDMs 'should not be afforded any evidentiary weight at the administrative hearing level,' which has led numerous courts to conclude that assigning any evidentiary weight to a SDM's opinion is an error." *Robles v. Comm'r of Soc. Sec.*, No. 5:15-CV-1359 (GTS), 2016 WL 7048709, at *5 (N.D.N.Y. Dec. 5, 2016) (quoting *Martin v. Astrue,* 10-CV-1113, 2012 WL 4107818, at *15); *see also Box v. Colvin*, 3 F.Supp.3d 27, 46 (E.D.N.Y. 2014)

13

("Because 'a single decision maker [ ] is not a medical professional [,] [ ] courts have found that an RFC assessment from such an individual is entitled to no weight as a medical opinion.' ") (quoting *Sears v. Astrue*, No. 2:11-CV-0138, 2012 WL 1758843, at *6 (D. Vt. May 15, 2012)).

In *Hart v. Astrue*, this Court found that the ALJ's decision to afford even minimal weight to a SDM's assessment was harmless error because the ALJ adopted greater restrictions on the plaintiff's abilities to lift, carry, push and pull than indicated by that source, the ALJ's conclusions were supported by the medical record as a whole (including opinions from a treating physician and consultative examiner), and it was clear that "the ALJ would have reached the same conclusion even if she had assigned no evidentiary weight to the SDM's assessment." *Hart v. Astrue*, 32 F.Supp.3d 227, 237 (N.D.N.Y. 2012) (citing *Yorkus v. Astrue.* No. 10-2197, 2011 WL 7400189, at *5 (E.D. Pa. Feb. 28, 2011)).  Here, unlike in *Hart*, there was no opinion evidence that clearly supported the ALJ's conclusions in the RFC assessment and it was not clear whether the ALJ would have found an ability to perform light work without having accounted for this opinion.  *See Kociuba v. Comm'r of Soc. Sec.,* No. 5:16-CV-0064, 2017 WL 2210511, at *7 (N.D.N.Y. May 19, 2017).  As in *Kociuba*, the ALJ here afforded "limited weight" to the only two medical source who provided functional limitations, both of which suggested Plaintiff could perform less than the RFC.  *Kociuba*, 2017 WL 2210511, at *8.

Defendant asserts that the ALJ's RFC determination was consistent with Dr. Perkins-Mwantuali's opinion.  (Dkt. No. 10 at 12 [Def.'s Mem. of Law].)  However, this Court may not "create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision

14

itself." *Martinbeault v. Astrue*, 2009 WL 5030789, *5 (N.D.N.Y. Dec. 14, 2009) (citing *Grogan v. Barnhart,* 399 F.3d 1257, 1263 (10th Cir. 2005)); *see also Snell,* 177 F.3d 134 (quoting *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 168 (1962)); *see also Melville v. Apfel,* 198 F.3d 45, 52 (2d Cir.1999). The ALJ did not state in his opinion that he relied on Dr. Perkins-Mwantuali's opinion in formulating the RFC. In addition, the ALJ afforded Dr. Perkins-Mwantuali's opinion "very little weight" indicating that the ALJ found her opinion to be unsupportive of the requirements of light work.

Overall, remand is necessary for a proper evaluation of the medical opinion evidence in the record and RFC determination.

**C. Mental Impairments**

Plaintiff argues that the ALJ failed to develop the record concerning Plaintiff's mental impairments and should have requested a psychiatric consultative examination to fully assess the extent of any limitation. (Dkt. No. 9 at 13 [Pl.'s Mem. of Law].) At step two the ALJ determined that Plaintiff did not have a severe mental impairment. (T. 26.) The ALJ stated that although Dr. Quinn treated Plaintiff for depression, she did not provide any mental functional limitations and at the hearing Plaintiff testified that she did not receive mental health services from a specialist. (T. 27.)

Plaintiff bears the burden of presenting evidence establishing severity. *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing *Miller v. Comm'r of Social Sec.,* No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); *see also* 20 C.F.R. §§ 404.1512(a), 416.912(a). Although the Second Circuit has held that this step is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala,* 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a

person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." *Coleman v. Shalala,* 895 F.Supp. 50, 53 (S.D.N.Y. 1995); *see Prince v. Astrue*, 514 F. App'x 18, 20 (2d Cir. 2013). A "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel,* No. 97-CV-5759, 1999 WL 294727, at *5 (E.D.N.Y. March 19, 1999) (quoting *Bowen v. Yuckert,* 482 U.S. 137, 154 n.12, 107 S.Ct. 2287 (1987)). Here, substantial evidence supported the ALJ's step two determination that Plaintiff did not have a severe mental impairment. Indeed, although Dr. Quinn diagnosed Plaintiff with depression and provided medication, Plaintiff's depression was controlled on medication. (T. 360 (denied depression), T. 362 (depression well controlled), T. 427 (patient denies depression), T. 440 (mood well controlled on Zoloft), T. 443-444 (mood stable; patient denies depression).) Therefore, substantial evidence supported the ALJ's step two evaluation and conclusion.

A consultative examination was not needed because the ALJ had sufficient evidence in the record to support his determination. The relevant Regulations stipulate that a consultative examination is ordered at the Administration's request, on an individual case basis, and when appropriate. *See* 20 C.F.R. §§ 404.1519, 416.919; *see also id.* at §§ 404.1517, 416.916. If the evidence in the record is sufficient to render a decision on the plaintiff's disability, an ALJ is not required to order a consultative examination. *See* 20 C.F.R. §§ 404.1517, 416.917; see *Kameisha v. Colvin*, 100 F. Supp. 3d 200, 208 (N.D.N.Y. 2015). Therefore, the ALJ did not err in his step two determination nor was the ALJ required to hire a consultative examiner.

### D. Step Four Determination

Plaintiff argues the ALJ erred in his step four evaluation due to error identified herein.  (Dkt. No. 9 at 13-14 [Pl.'s Mem. of Law].)  Plaintiff also asserts that the ALJ failed to include any environmental limitations in the RFC as provided by the SDM.  (*Id.* at 14.)  First, due to the errors in weighing the opinion evidence and RFC analysis, the ALJ will also need to make a new finding related to whether Plaintiff can perform her past relevant work.  Second, as outlined herein and stressed by Plaintiff elsewhere in her brief, ALJ's should not afford any weight to the opinions of SDMs.  Overall, remand is required for a proper weighing of the medical opinion evidence, RFC determination, and new findings related to whether Plaintiff can perform her past relevant work or work that exists in the national economy.  If warranted, the ALJ should consult a vocational expert.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated:     February 7, 2018

*Bill Carter*
William B. Mitchell Carter
U.S. Magistrate Judge